# In the United States Court of Federal Claims

Case No. 06-943L
(FILED: April 24, 2008)
NOT TO BE PUBLISHED

```
* * * * * * * * * * * * * * * * * * * * * * * * *   *
                                                    *
THE SALT RIVER PIMA-MARICOPA                        *
INDIAN COMMUNITY,                                   *
                    Plaintiff,                      *
                                                    *
            v.                                      *
                                                    *
THE UNITED STATES OF AMERICA,                       *
                    Defendant.                      *
                                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *   *
```

***Keith Harper***, ***G. William Austin***, and ***Catherine F. Munson***, Washington, D.C., for the Plaintiff.

***Kevin J. Larsen***, Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., with whom was ***Ronald J. Tenpas***, Assistant Attorney General, for the Defendant. ***John H. Martin***, Environment and Natural Resources Division, U.S. Department of Justice, Denver, CO., ***Thomas R. Bartman***, Indian Trust Litigation Office, Office of the Solicitor, Department of the Interior, Washington, D.C., and ***Teresa Dawson***, Office of the Chief Counsel, Financial Management Service, U.S. Department of the Treasury, Washington, D.C., Of Counsel.

***Lauren A. Weeman***, law clerk.

---

**OPINION AND ORDER**

---

**BASKIR, Judge.**

This is a tribal trust accounting case. It comes before the Court on the Government's motion to dismiss pursuant to 28 U.S.C. § 1500, contending that the same claims were already pending in District Court when the instant Complaint was filed.

Having reviewed the parties' initial and supplemental briefs and weighed the documentary evidence and testimony presented by the parties, we find that the claims set forth in the Plaintiff's District Court Complaint were not pending for purposes of § 1500 when the instant Complaint was filed.  **We therefore DENY the Government's motion to dismiss.**

## BACKGROUND

**I.      Introduction**

On Friday, December 29, 2006, the Salt River Pima-Maricopa Indian Community (the Plaintiff or Salt River), a federally recognized Indian Tribe, commenced two actions in federal courts in Washington, D.C.  The Plaintiff filed the instant Complaint (*Salt River* CFC Complaint or CFC Compl.) seeking money damages against the United States for breach of various trust obligations.  *Salt River* CFC Compl. ¶ 1.  The Plaintiff also filed a Complaint with the United States District Court for the District of Columbia (*Salt River* DC Complaint or DC Compl.) that day.  The *Salt River* DC Complaint, which is appended to the Government's motion at Exhibit 1, seeks "redress of breaches of trust by the United States . . . in the management and accounting of trust assets . . . belonging to the [P]laintiff" and seeks to "compel the [United States] to provide a full and complete accounting of all trust assets belonging to the [Plaintiff]." *Salt River* DC Compl. ¶ 1.

On August 23, 2007, the Government filed a motion to dismiss pursuant to the Rules of the Court of Federal Claims (RCFC) 12(b)(1) invoking 28 U.S.C. § 1500.  Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has <u>pending in any other court</u> any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (2008) (emphasis added).  Determining whether § 1500 applies is a two-step process.  First, the Court must examine whether the Plaintiff, when it filed the Complaint with this Court, had "pending in any other court any suit or process against the United States . . . . " *Id*; *Breneman v. United States*, 57 Fed. Cl. 571, 577 n.11 (2003).  We will analyze the "pending" issue by deciding the sequence in which the Plaintiff filed the *Salt River* CFC and DC Complaints on December 29, 2006.  If we determine that the *Salt River* DC Complaint was filed first, we must then determine

whether the "same claims" are presented in both Complaints. *See Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 n.23 (Fed. Cir. 1994); *Breneman*, 57 Fed. Cl. at 575. If so, the instant Complaint must be dismissed. However, § 1500 does not apply if the *Salt River* CFC Complaint was filed first or if the claims set forth in the two Complaints are different.

We conclude that the *Salt River* CFC Complaint was filed first. Therefore, § 1500 does not apply and we must deny the Government's motion to dismiss. A comparative analysis of the claims is not necessary. *See Breneman*, 57 Fed. Cl. at 577 n.11; *Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *cf. Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 2008 U.S. Claims LEXIS 14, at *29 (2008) (addressing the "same claim" issue after finding that § 1500 did not apply in case it were "to be found that the [C]ourt's factual determination [regarding the applicability of § 1500] was clearly in error").

## II.     Procedural History

The Government filed its motion to dismiss (Def. Mot.) on August 23, 2007. The Plaintiff filed a response (Pl. Resp.) in opposition on September 13, 2007. The Government's reply to the Plaintiff's response was filed on September 27, 2007. In their briefs, both parties relied on documentary evidence relevant to the sequence of filing of the two *Salt River* Complaints that was produced by the Plaintiff during discovery. These documents are appended to the parties' briefs and include, *inter alia*, responses to the Government's interrogatories regarding the sequence of filing (Def. Mot. Ex. 2); a copy of the DC District Court docket for December 29, 2006, from PACER (Def. Mot. Ex. 3); contemporaneous and subsequent e-mail correspondence between attorneys at Kilpatrick Stockton LLP, Plaintiff's counsel (*E.g.,* Def. Mot. Ex. 4, 7; Pl. Resp. Ex. 3); various affidavits executed by Ms. Alexis Applegate, the Kilpatrick Stockton paralegal who filed both *Salt River* Complaints (Def. Mot. Ex. 5; Pl. Resp. Ex. 1); copies of taxi cab receipts for trips taken by Ms. Applegate to the DC District Court on December 29 (Def. Mot. Ex. 8; Pl. Resp. Ex. 4); copies of the *Salt River* PACER dockets from both the Court of Federal Claims and the DC District Court (Def. Mot. Ex. 11, 12); and copies of the date-stamped cover sheets of the two *Salt River* Complaints (Def. Mot. Ex. 1, 13).

At the outset of this Opinion, it is important to note that neither the Clerk's Office at the Court of Federal Claims nor the Clerk's Office at the DC District Court time-stamps complaints as they are received during business hours. Pl. Resp. Ex. 3 ("[T]here is no time stamp on documents filed during the [C]lerk's [O]ffice business hours, just the date."); Def. Mot. Ex. 13. In addition, Plaintiff's counsel represents three other Indian Tribes in tribal trust accounting cases currently pending against the United States. Def. Mot. at 3. To complicate matters, Ms. Applegate filed a total of seven complaints on behalf of the firm's four tribal clients on December 29, 2006: four with this Court and three with the DC District Court.

Given the number of complaints filed by Ms. Applegate both here and with the DC District Court on December 29, 2006, and the fact that none of the complaints was time-stamped, determining the sequence in which the two *Salt River* Complaints were filed has proven a difficult task.  After reviewing the parties' initial briefs, including the appended exhibits, we concluded that live testimony from Ms. Applegate was necessary to resolve the "pending" issue.  The Court therefore held an evidentiary hearing on December 10, 2007 (Dec. 10 Hrg. Tr.), during which Ms. Applegate was questioned directly by Plaintiff's counsel and cross-examined by the Government.

Although helpful testimony was elicited from Ms. Applegate during the December 10 evidentiary hearing, certain important questions regarding the procedures for filing complaints with the Court of Federal Claims were left unanswered.  We therefore asked Ms. Lisa Reyes, the Chief Deputy Clerk for Operations for the Court of Federal Claims, to provide information about this Court's filing procedures.  Ms. Reyes did so in an informal hearing on December 12, 2007 (Dec. 12 Hrg. Tr.).  In addition to answering questions from the Bench, Ms. Reyes was questioned by counsel.  Much of this hearing focused on the relationship between the six-digit number that appears on filing receipts issued by the CFC Clerk's Office and the order in which the corresponding complaints were filed.

At the close of the December 10 evidentiary hearing, the Court ordered the parties to file supplemental briefs focusing on the "pending" issue.  The Plaintiff filed a supplemental brief (Pl. Supp. Br.) on February 14, 2008.  The Defendant filed its response (Def. Supp. Br.) on February 28, 2008.  The Plaintiff's reply (Pl. Supp. Rep.) was filed on March 6, 2008.  Oral argument was not necessary to resolve the Government's motion.

**III.    Related Tribal Trust Accounting Cases**

The instant motion must be resolved based solely on those facts pertinent to the filing of the two *Salt River* Complaints.  However, the filing of these two complaints must be placed in context.  As indicated above, Plaintiff's counsel represents three other Indian Tribes in their respective tribal trust accounting cases against the United States. Def. Mot. at 3.  Ms. Applegate filed four complaints on behalf of those tribal clients with this Court on December 29, 2006.  In addition to the *Salt River* CFC Complaint, Ms. Applegate filed complaints styled *Ak-Chin Indian Community v. United States*, No. 06-932L; *Passamaquoddy Tribe v. United States*, No. 06-942L; and *Tohono O'odham Nation v. United States*, No. 06-944L.  Pl. Resp. at 4.

Ms. Applegate also filed three complaints on behalf of the firm's tribal clients with the DC District Court on December 29, 2006.  In addition to the *Salt River* DC Complaint, Ms. Applegate filed complaints styled *Ak-Chin Indian Community v.*

*Dirk Kempthorne, Ross O. Swimmer, and Henry M. Paulson*, Case No. 1:06-cv-02240-JR and *Passamaquoddy Tribe v. Dirk Kempthorne, Ross O. Swimmer, and Henry M. Paulson*, Case No. 1:06-cv-02241-JR, with the DC District Court. *Id.*

The Government filed motions to dismiss invoking 28 U.S.C. § 1500 in each of the four cases filed with this Court on December 29, 2006. As of the date of this Opinion, the Court has granted the Government's motion to dismiss *Tohono O'odham Nation v. United States*, No. 06-944L. 79 Fed. Cl. 645, 646 (2007). In *Tohono O'odham*, there was no question whether the claims asserted in the plaintiff's DC Complaint were "pending" for purposes of § 1500 when the CFC Complaint was filed. The *Tohono O'odham* DC Complaint was filed on December 28, 2006, one day before the CFC Complaint was filed. *Id.* Judge Eric G. Bruggink dismissed the CFC Complaint on the grounds that the claims set forth arose from the same operative facts and sought the same relief as those asserted in the DC Complaint. *Id.* at 659.

The Court has denied the Government's motion to dismiss *Ak-Chin Indian Community v. United States*, No. 06-932L. 2008 U.S. Claims LEXIS 14, at *61. Similar to the instant case, and unlike *Tohono O'odham*, the *Ak-Chin* CFC and DC Complaints were both filed on December 29, 2006. Judge Emily C. Hewitt was therefore tasked with determining the sequence in which the two *Ak-Chin* Complaints were filed. After holding an evidentiary hearing and oral argument on October 24, 2007, and reviewing supplemental briefs filed by the parties, Judge Hewitt concluded that the *Ak-Chin* CFC Complaint was filed before the *Ak-Chin* DC Complaint. The claims set forth in the *Ak-Chin* DC Complaint were therefore deemed not to have been "pending" for purposes of § 1500 when the *Ak-Chin* CFC Complaint was filed. *Id.* at *28.

The Court has not yet ruled on the Government's motion to dismiss in the *Passamaquoddy* case. *Passamaquoddy* is factually similar to *Ak-Chin* and to the instant case because both of the plaintiff's complaints were filed on December 29, 2006. An evidentiary hearing regarding the sequence of filing was held before Judge Lynn J. Bush on February 1, 2008. The parties are submitting post-hearing briefs.

The fact that a total of seven complaints were filed by Plaintiff's counsel on behalf of four tribal clients on December 29, 2006, bears on the sequence in which the two *Salt River* Complaints were filed. In addition, the parties have relied on Ms. Applegate's testimony from the evidentiary hearings before Judge Hewitt and Judge Bush to argue the instant motion. Transcripts from both hearings are part of the record in this case. The Plaintiff's November 8, 2007, motion to supplement the record with the hearing transcript from *Ak-Chin* (*Ak-Chin* Hrg. Tr.) was granted on December 1, 2007. The Plaintiff's February 14, 2008, motion to supplement the record with the hearing transcript from *Passamaquoddy* (*Pass*. Hrg. Tr.*)* was granted on March 6, 2008.

**DISCUSSION**

**I.     Standard of Review**

In evaluating a motion to dismiss pursuant to RCFC 12(b)(1), the Court presumes all undisputed factual allegations made by the non-moving party to be true and draws all reasonable inferences in the non-moving party's favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The Plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court has subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). If jurisdictional facts central to the motion are in dispute, the Court may consider other relevant evidence to resolve the dispute. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Reynolds*, 846 F.2d at 747; *Ak-Chin Indian Cmty.*, 2008 U.S. Claims LEXIS 14, at *5.

**II.    The "Pending" Issue**

The Government makes two principal arguments regarding the "pending" issue. First, the Government argues that the *Salt River* DC Complaint should be deemed to have been "pending" when the *Salt River* CFC Complaint was filed simply because the two complaints were filed on the same day, regardless of which complaint was in fact filed first. Def. Mot. at 8. There is no authority for the Government's same-day argument.

To the contrary, the Court has previously rejected this argument. In *Breneman v. United States*, the Government argued that the same-day filing of complaints with the Court of Federal Claims and District Court automatically deprived this Court of jurisdiction over the plaintiffs' claims. 57 Fed. Cl. at 574. The Court found that the same-day argument was without merit, noting that the Government had not cited to, nor had the Court found on its own, any precedent which dealt specifically with the effect of same-day filings for purposes of § 1500. *Id.* at 576-77. Rather than decide the jurisdictional issue based solely upon the fact that the complaints were filed on the same day, the *Breneman* Court applied the rule from *Tecon Engineers, Inc. v. United States*, 343 F.2d 943, 946 (Ct. Cl. 1965).

The Court examined the sequence of filing of the plaintiffs' Court of Federal Claims and District Court complaints. Upon finding by a preponderance of the evidence that the plaintiffs had filed the complaint in this Court first, the Court denied the Government's motion to dismiss pursuant to § 1500. *Id.* at 577. The Government's same-day argument must once again be rejected in this case. *See Ak-Chin Indian Cmty.*, 2008 U.S. Claims LEXIS 14, at *12 n.4 (refusing to address the same-day argument presented by the Government because the argument lacked precedential authority); *see also Loveladies Harbor*, 27 F.3d at 1548 ("[t]he question of whether

another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed . . . . ").

The Government next argues that the *Salt River* DC Complaint should be deemed to have been "pending" when the *Salt River* CFC Complaint was filed because the *Salt River* DC Complaint was actually filed first on December 29, 2006. Def. Mot. at 11-12. The Plaintiff disputes this contention and argues that Ms. Applegate came to this Court to file the instant Complaint before going to the DC District Court. Pl. Resp. at 4-5. We requested that Ms. Applegate appear before the Court to provide her account of the events of December 29, 2006. We relied upon her testimony, as well as upon additional evidence in the record, to make our own determination of the sequence in which the two *Salt River* Complaints were filed.

### A.     Ms. Applegate's Testimony

The Plaintiff relies primarily upon Ms. Applegate's testimony from the three evidentiary hearings to support its contention that the *Salt River* CFC Complaint was filed first. *See* Pl. Supp. Br. at 3-5; Pl. Supp. Rep. at 1-2. During the December 10 evidentiary hearing, Ms. Applegate testified under oath that she "filed the [*Salt River*] Complaint in [] the Court of Federal Claims, before District Court." Dec. 10 Hrg. Tr. 17:20-21. On direct, Ms. Applegate further testified:

> We prepared [] the *Salt River*, the *Tohono O'odham*, and the *Passamaquoddy*[] CFC [C]omplaints first. I brought those over, I walked them over, filed them, obtained a receipt, and then walked back to the office. I arrived and the District Court [C]omplaints for *Salt River* and *Passamaquoddy* were ready. I took a cab over to the District Court, filed those with the intake clerk and took a cab back to the office[] from the District Court at which point we prepared the *Ak-Chin* [C]omplaint for the CFC, walked that over and brought that back. Then we prepared the *Ak-Chin* District Court [C]omplaint. I took a cab over to the District Court to file the *Ak-Chin* [C]omplaint.

*Id.* at 20:5-15 (emphasis added). This account is consistent with that presented during the October 24, 2007, hearing before Judge Hewitt:

> The first trip, I came here to the CFC's [C]lerk's [O]ffice to file *Passamaquoddy*, *Salt River*, and *Tohono O'odham*. I then returned to the office, upon which I was told, and figured out, that both the *Passamaquoddy* and *Salt River* [D]istrict [C]ourt [C]omplaints were ready. So I took those to the [D]istrict [C]ourt . . . . I then returned back to the office, to discover the *Ak-Chin* CFC [C]omplaint was ready. I walked that over here. I returned to the office and found out that the *Ak-Chin* [D]istrict [C]ourt [C]omplaint was ready. I took that over to the [D]istrict [C]ourt by taking a cab . . . .

*Ak-Chin* Hrg. Tr. 18:20-19:9; *see also Ak-Chin Indian Cmty.*, 2008 U.S. Claims LEXIS 14, at *13. It is also consistent with Ms. Applegate's testimony on February 1, 2008, before Judge Bush:

> Once I got in in the morning, my first trip was here to the CFC. I took the finalized complaints for *Passamaquoddy*, *Salt River*[,] and *Tohono O'odham* with the requisite materials, walked them over here, filed them, walked back to the office at which point the *Salt River* and *Passamaquoddy* [C]omplaints for the District Court, the copies had been made, had been prepared by my team. I took a cab to the District Court, did the process there with the intake clerk and the filing, came back to the office via cab to find they were still filling in some blanks on the CFC [C]omplaints [sic] for *Ak-Chin*. Once those were filled in, I prepared that for filing, again walked over here, filed, walked back at which point when I got back, the District Court [C]omplaints had been prepared, the [C]omplaint for *Ak-Chin*.

*Pass.* Hrg. Tr. 14:9-18.

Ms. Applegate's testimony is also consistent with her prior statements. First, in an e-mail dated April 23, 2007, Ms. Applegate wrote that, as of that date, she thought she "went to the CFC first, but [wa]s not certain about that." Pl. Supp. Br. Ex. 13. Ms. Applegate sent this message in response to an inquiry about the sequence of filing from Ms. Catherine Munson, a Kilpatrick Stockton attorney on the *Salt River* team. Ms. Munson specifically asked Ms. Applegate if she knew "of a way to find out what time the [*Salt River*] and [*Passamaquoddy*] cases were filed in the CFC and [DC District Court] on Dec. 29th." *Id.* at Ex. 12. Ms. Applegate's response was apparently sent before she had an opportunity to review any documentary evidence related to the December 29 filings. *See* Pl. Supp. Rep. at 8-9.

Second, one of the Plaintiff's responses to the Government's interrogatories executed on August 2, 2007, states that "[t]o the best of her recollection, Ms. Applegate . . . filed the Complaint in the Court of Federal Claims Actions prior to filing the Complaint in the *Salt River* District Court Action." Plaintiff's Responses and Objections to the Defendant's First Set of Interrogatories, Aug. 2, 2007, Def. Mot. Ex. 2 at 16. Third, a sworn affidavit executed by Ms. Applegate on September 13, 2007, states, "To the best of my recollection, . . . I filed the Complaint in the Court of Federal Claims Action prior to filing the Complaint in the *Salt River* District Court Action." Applegate Affidavit, Sept. 13, 2007, Pl. Resp. Ex. 1 ¶ 8.

In addition to the testimony quoted above, Ms. Applegate provided considerable detail during the December 10 evidentiary hearing about the actions she took to file the two *Salt River* Complaints. Although she was unable to state precisely what time she filed the Complaints because neither is time-stamped, Dec. 10 Hrg. Tr. 17:13-14,

Ms. Applegate testified that she filed the *Salt River* CFC Complaint "[s]hortly after 9:30 [a.m.,]" *id.* at 17:22-24.  Ms. Applegate said she knows this because one of her colleagues forwarded the final version of the *Salt River* CFC Complaint to her and to other members of the *Salt River* litigation team via e-mail at 9:26 a.m. on December 29. *See id.* at 18:2-17.

On cross-examination, Ms. Applegate stated that she was not at her desk at 9:26 a.m. to receive the e-mail personally, but that one of her colleagues promptly notified her that the final *Salt River* CFC Complaint was ready.  *See id.* at 47:16-22; Pl. Supp. Br. Ex. 3.  Ms. Applegate said that she prepared the *Salt River* CFC Complaint for filing along with the *Tohono O'odham* CFC Complaint, *see* Dec. 10 Hrg. Tr. 18:5-6, 14-16, and that while she did so, another member of her team completed the *Passamaquoddy* CFC Complaint, *see id.* at 18:21-19:3.  As soon as all three Complaints were ready, Ms. Applegate brought them to this Court for filing.  *Id.* at 20:5-7.

Ms. Applegate explained that she did not file the *Ak-Chin* CFC Complaint along with the other three CFC Complaints because *Ak-Chin* was not ready until "after 11:40 [a.m.]."  *Id.* at 19:10-12.  Plaintiff's counsel was apparently waiting for additional information required for that Complaint while the other three CFC Complaints were completed.  Ms. Applegate testified that rather than "wait until the *Ak-Chin* [CFC Complaint] was ready and file all four of the Court of Federal Claims Complaints at the same time[,]" she brought the three final CFC Complaints to this Court as soon as possible because she "didn't want to adversely impact [the other three clients'] interest in filing these [C]omplaints due to the fact that [the firm] had been delayed on [*Ak-Chin*]."  *Id.* at 19:15-21.

Ms. Applegate also testified that she filed the *Salt River* DC Complaint around 10:30 a.m.  *Id.* at 24:2-5.  She explained that it took her "that amount of time to get the[ *Salt River* DC Complaint] ready and then to get over to the District Court to file [it]."  *Id.* at 24:2-7.  Ms. Applegate had to take a taxi to file the *Salt River* DC Complaint given the distance between her office and the DC District Court.  *See id.* at 26:12-20.  However, she was able to walk to this Court to file the *Salt River* CFC Complaint.  Kilpatrick Stockton's office is located at 14th and F Streets, NW, in Washington, D.C., which is approximately 5 minutes walking distance from the Court of Federal Claims. *See id.* at 52:2-53:2.  According to Ms. Applegate, it took her about 5 to 10 minutes to take a taxi to the DC District Court, *id*. at 56:5-8, which is located at 333 Constitution Avenue, NW, approximately 1.2 miles away from her office, *id.* at 57:20-24.  It is a ride she takes regularly.  *Id.* at 56:7.

When challenged on cross-examination regarding the plausibility of filing both *Salt River* Complaints between approximately 9:30 and 10:30 a.m., Ms. Applegate testified that she prepared many of the documents required for filing, including the checks for filing fees and civil cover sheets, prior to receiving the final version of the

-9-

*Salt River* CFC Complaint. *Id.* at 51:2-9. Ms. Applegate also stated that Kilpatrick Stockton has several copy machines that are capable of running and stapling multiple copies in a matter of minutes. *Id.* at 49:8-17. According to Ms. Applegate, she completed the filing of the *Salt River* CFC Complaint, along with the *Passamaquoddy* and *Tohono O'odham* CFC Complaints, quickly because there was no line at the Court of Federal Claims security desk, *id.* at 53:3-10, and there was "no one" at the Clerk's Office when she arrived that morning, *id.* at 55:5. She stated, "I recall that it did not take me very long [to file at the Court of Federal Claims] at all. They processed my complaints very quickly . . . . [I]t was a very easy process." *Id.* at 55:4-8.

Ms. Applegate explained that while she was filing the *Salt River* CFC Complaint, her colleagues prepared everything she needed to file the *Salt River* DC Complaint. *Id.* at 55:18-20. The *Salt River* DC Complaint had been completed the previous evening. *Id.* at 21:5-7. The *Salt River* DC Complaint – including the required number of copies, checks for filing fees, and cover sheets – was therefore ready when Ms. Applegate returned to her office after filing the *Salt River* CFC Complaint. *See id.* at 55:18-56:1. This enabled her to travel to the DC District Court shortly after returning from filing the instant Complaint with this Court. *See id.* at 55:18-56:4.

Ms. Applegate testified on direct that she came to the CFC first not only because she wanted to file each CFC Complaint as it became ready, *id.* at 19:15-21, but also because Mr. Keith Harper, counsel of record for the Plaintiff, orally instructed her to do so, *see id.* at 22:1-5. Mr. Harper was concerned that the courts might close early on December 29, 2006, in anticipation of the New Years holiday weekend or in observance of the death of President Ford. *Id.* at 22:15-20. He sent Ms. Applegate an e-mail at 9:44 p.m. on December 28, 2006, asking her to check whether either the Court of Federal Claims or the DC District Court planned to close early on December 29. *Id.* at 22:11-14; Pl. Resp. Ex. 6. Ms. Applegate, who did not have a Blackberry, Dec. 10 Hrg. Tr. 25:7, called both Clerk's Offices first thing on December 29, *id.* at 22:22. Although the DC District Court confirmed that the Clerk's Office would be open all day, the CFC Clerk's Office stated that there was no plan to close early, but that the Chief Judge made the final determination regarding early closures. *Id.* at 22:22-23:2.

Mr. Harper was also apparently concerned that Ms. Applegate might have difficulty filing the CFC Complaints. Although she had filed the *Tohono O'odham* DC Complaint the previous day and had completed hundreds of filings with the DC District Court throughout her career as a paralegal, neither she nor Mr. Harper had ever filed a complaint with this Court. *See id.* at 23:10-12. Given his lack of familiarity with the CFC's filing procedures, Mr. Harper wanted to be sure to allow ample time to make corrections to the filings if necessary. *Id.* at 23:13-17.

Ms. Applegate relayed the information about closing plans to Mr. Harper who orally instructed her to file the CFC Complaints first. *Id.* at 23:3-6. Mr. Harper gave Ms. Applegate this oral instruction after sending an e-mail at 8:59 a.m. telling her to file

-10-

the DC Complaints while the CFC Complaints were being prepared. *Id.* at 24:14-18; Def. Mot. Ex. 4. Ms. Applegate testified on December 10 that she did not follow Mr. Harper's e-mail instructions. *Id.* at 24:19-20. She explained that she never saw his 8:59 a.m. e-mail because she was away from her desk when it was sent. *Id.* at 24:23-25:3. Ms. Applegate further stated that she does not recall seeing this e-mail until the firm began preparing for discovery. *Id.* at 24:23-24.

In response to the Government's first set of interrogatories, Mr. Harper confirmed giving Ms. Applegate an oral instruction to file the CFC Complaints first. Plaintiff's Responses and Objections to the Defendant's First Set of Interrogatories, Aug. 2, 2007, Def. Mot. Ex. 2 at 14-16. Specifically, Response 11 states, "Mr. Harper was not as familiar with the filing procedures in th[e Court of Federal Claims]" and therefore

> [he] instructed Ms. Applegate that she should file the Complaints initiating the Court of Federal Claims Actions as early as possible and before filing the Complaints [Ms. Applegate] was planning to file in the District Court that day so that Mr. Harper and Ms. Applegate would have sufficient time to cure any potential problems occurring in connection with filing the Complaints in the Court of Federal Claims Actions.

*Id.* at 15. There is no contemporaneous evidence in the record indicating that Ms. Applegate followed Mr. Harper's oral instructions. However, Ms. Applegate testified that she knows she did because, if for some reason she was unable to, she would have notified Mr. Harper. Ms. Applegate does not recall any such conversation. Dec. 10 Hrg. Tr. 23:20-24. Ms. Applegate is confident that she carried out Mr. Harper's oral instructions "in the manner in which he instructed [her,]" *id.* at 24:1, and filed the *Salt River* CFC Complaint before filing the *Salt River* DC Complaint.

### B.     Alleged Inconsistencies in the Record

Notwithstanding Ms. Applegate's sworn testimony, the Government maintains that the Plaintiff has failed to meet its burden of proving by a preponderance of the evidence that the instant Complaint was filed before the *Salt River* DC Complaint. *See* Def. Supp. Br. at 6. The Government urges the Court to disregard much of Ms. Applegate's testimony, which the Government contends is "marred with inconsistency" and was presented through the Plaintiff's "own rose-colored and very distorted prism." *Id.* at 3. The Government asks the Court to rely instead upon the documents presented by the parties, which it believes "speak for themselves" and "provide this Court with the best and most-accurate [sic] glimpse of the series of events that occurred on December 29, 2006 . . . . " *Id.* According to the Government, these documents contradict Ms. Applegate's account of the sequence of filing and demonstrate that the *Salt River* DC Complaint was filed prior to the *Salt River* CFC Complaint. *Id.* at 7.

In an attempt to undermine Ms. Applegate's credibility, the Government's supplemental brief highlights what it alleges are several glaring inconsistencies in the record and sets forth the Government's own explanation of the documentary evidence – an explanation which it contends is more plausible than that presented by Ms. Applegate. We will discuss each of the principal inconsistencies alleged by the Government in turn.

### 1.   The DC District Court Docket

The Government makes much of the fact that *Passamaquoddy* and *Salt River* are the very first two cases appearing on the DC District Court's December 29 PACER docket. *Id.* at 8, 14. In its supplemental brief, the Government states, "[a] key and irrebuttable fact in this case as evidenced by the District Court's December 29, 2006 Docket Report, is that the Plaintiff's District Court Action was just the second case filed by *any* party in that Court on December 29, 2006." *Id.* at 8 (citing Def. Mot. Ex. 14; Dec. 10 Hrg. Tr. 29:14-17) (emphasis in original); *see also* Def. Mot. at 3 ("The [DC] District Court assigns case numbers to new actions in the order in which those actions are filed."). The Government thus reiterates a point made in its opening brief. *See* Def. Mot. at 12 ("[T]he District Court's docket indicates that the *Salt River* [] Complaint was just the second complaint filed in that Court on Friday, December 29, out of a total of thirty-six Complaints filed throughout the day . . . . *Passamaquoddy* [] was the very first case filed that day.").

The Government asserts that the leading order in which these two tribal cases appear on the DC District Court docket compels one logical conclusion – namely, that the *Salt River* DC Complaint was filed earlier in the day than the *Salt River* CFC Complaint. Def. Supp. Br. at 14-15. To support this conclusion, the Government relies on a conversation that Government counsel "had with personnel at the [DC District Court] Clerk's Office on November 14, 2007." *Id.* at 13 n.11. The Government refers to statements made by a cashier at the DC District Court Clerk's Office who was on duty on December 29, 2006, writing: "while she did not remember anything specific about the Plaintiff's Complaint filed that day, she stated it would be unusual for the first complaint of the day to have been filed several hours into the morning, close to the lunch hour." *Id.* (emphasis in original).

The Government views this conversation as rebutting Ms. Applegate's testimony that she filed the *Salt River* DC Complaint around 10:30 a.m. In order for this to be the case, the Court would have to accept a hearsay conversation about when the first complaint of the day is usually filed with the DC District Court Clerk's Office as conclusive of the time at which the first complaint was actually filed on the day in question. We cannot do so.

Both parties raised this issue during the December 10 evidentiary hearing. At that time, the Court accepted a proffer by the Plaintiff that, during a visit to the DC District Court Clerk's Office on a "random day," Plaintiff's counsel observed that the first complaint of the day was filed at 11:40 a.m. Dec. 10 Hrg. Tr. 86:13-87:4. In accepting this proffer, the Court specifically warned that anything Plaintiff's counsel observed during the visit would not be taken as indicative of what happened on December 29, 2006. *Id.* at 87:4-6. It is difficult to make any generalizations about the time complaints are filed since each day is different. Plaintiff's counsel indicated during the December 10 hearing that it shared the Court's concerns. *See id.* at 90:21.

In addition, as the Plaintiff points out, Ms. Applegate has completed hundreds of filings with the DC District Court during her six years as a paralegal. Pl. Supp. Rep. at 5. She testified that based on her personal experience it is not uncommon for complaints to be filed later in the day, as opposed to first thing in the morning. *See id.*; *see also* Dec. 10 Hrg. Tr. 35:6-10. Ms. Applegate avows that she has "almost always" made District Court filings "in the afternoon to give as much time as possible to work on the document." Dec. 10 Hrg. Tr. 35:8-10. December 29, 2006, is the first time Ms. Applegate can recall completing an in-person filing before 10:30 a.m. *Id.* at 35:11-13. Lawyers being lawyers, it is not implausible that the first complaint of the day would be filed around 10:40 a.m. The Government's attempt to undermine Ms. Applegate's credibility on this point is unpersuasive.

### 2. Final Versions of the *Salt River* Complaints

The Government also tries to subvert Ms. Applegate's testimony by highlighting the sequence in which the final versions of the *Salt River* CFC and DC Complaints were completed. *See* Def. Supp. Br. at 9. The Government points out that Plaintiff's counsel "continued to work on the [*Salt River* CFC] Complaint during the morning hours of December 29." *Id.*; Def. Mot. Ex. 4 (e-mail with the final draft of the *Salt River* CFC Complaint attached was transmitted at 9:26 a.m. on December 29, 2006). However, as noted above, the *Salt River* DC Complaint was in final form the evening of December 28. Dec. 10 Hrg. Tr. 21:5-7. According to the Government, the fact that the *Salt River* DC Complaint was ready the evening of December 28, combined with the fact that it was the second of all cases filed with the DC District Court on December 29, suggests that Ms. Applegate's testimony is incorrect. *See* Def. Supp. Br. at 13-14.

The Government also argues that Ms. Applegate's testimony about the sequence in which she filed the two *Salt River* Complaints cannot be reconciled with her "stated interest in filing the [C]omplaints as they became ready." *Id.* at 13. During the December 10 evidentiary hearing, Ms. Applegate testified on direct that she made two trips to the CFC on December 29 and did not wait to file all four CFC Complaints together because she "did not want to adversely impact the[ firm's other tribal clients'] interest in filing the[ir respective C]omplaints due to the fact that [the firm] had been delayed on [*Ak-Chin*]." Dec. 10 Hrg. Tr. 19:19-21. The Government does not agree

that this portion of Ms. Applegate's testimony can be squared with her overarching testimony that she filed the *Salt River* CFC Complaint before going to the DC District Court.  The Government contends that the firm's stated "motivation to file each [C]omplaint as soon as it was finalized . . . . apparently did not apply with equal force to the firm's representation of its clients' interests with the District Court Complaints . . . . "  Def. Supp. Br. at 12.  If it had, the Government argues that the *Salt River* DC Complaint, which was ready first, would have been filed first.  *See id.* at 12-13.

   The Government's argument ignores Ms. Applegate's testimony about the oral instruction she received from Mr. Harper to file the CFC Complaints first.  *See* Dec. 10 Hrg. Tr. 23:2-6.  Furthermore, and perhaps more importantly, Ms. Applegate's testimony that she filed each Complaint as it became ready is consistent with her account of the sequence of filing of the CFC Complaints.  Ms. Applegate testified that she filed the *Passamaquoddy*, *Salt River*, and *Tohono O'odham* CFC Complaints shortly after receiving the 9:26 a.m. e-mail transmitting the final versions.  Pl. Supp. Rep. at 6; Dec. 10 Hrg. Tr. 17:22-18:6.  She further testified that she waited to return to the Court of Federal Claims to file the *Ak-Chin* Complaint, which was not ready until after 11:40 a.m.  Dec. 10 Hrg. Tr. 19:10-14.  Ms. Applegate therefore completed the filings of the *Passamaquoddy*, *Salt River*, *Tohono O'odham*, and *Ak-Chin* CFC Complaints as they became ready on December 29.

   Although the Government is correct to point out that Ms. Applegate did not file the *Salt River* DC Complaint as soon as it was ready, we find the explanation for delaying Ms. Applegate's first trip to the DC District Court convincing.  The lack of experience that Plaintiff's counsel had filing complaints with the Court of Federal Claims, combined with Mr. Harper's concern that the CFC Clerk's Office might close early, provided ample motivation for the firm to send Ms. Applegate to this Court first.

### 3.   Court of Federal Claims Filing Receipts

   An additional argument presented by the Government relates to the four filing receipts that were issued by the CFC Clerk's Office.  At the bottom left corner of each receipt is a six-digit number.  The receipt numbers for the CFC Complaints filed by Plaintiff's counsel on December 29 are: *Ak-Chin* #065946; *Passamaquoddy* #065957; *Salt River* #065958; *Tohono O'Odham* #065959.  The Government argues that the order of these receipt numbers proves that, contrary to Ms. Applegate's testimony, the *Ak-Chin* CFC Complaint was filed before the instant Complaint.  Def. Supp. Br. at 11 ("The plain inference to be drawn from th[e sequence of the receipt numbers] is that the [*Salt River*] Complaint [] was filed *after* the *Ak-Chin* Complaint in the CFC, and that the *Ak-Chin* CFC Complaint was filed *after* 11:41 a.m.") (emphasis in original).  The Government relies upon the fact that the filing receipts are written from a receipt book which organizes them numerically from lowest to highest.  *See id.* at 10.  The *Ak-Chin* receipt number is at least eleven digits lower than the other receipts.

The Government's argument hinges upon there being a correlation between the sequence of receipt numbers and the order in which complaints are received by the CFC Clerk's Office. However, during the informal hearing on December 12, 2007, Ms. Reyes, the Chief Deputy Clerk for Operations for the Court of Federal Claims, stated that there is no such correlation. When asked by Government counsel whether she could tell if the *Ak-Chin* CFC Complaint with receipt #065946 was dropped off first, Ms. Reyes stated, "I don't know whether th[e *Ak-Chin* C]omplaint was dropped off prior to the other three [CFC C]omplaints, but I can tell you that the receipts would be written from lowest number to highest number, so I know that the [] 65946 receipt[] would be written in [sic] before the receipt ending in 957 and 958." Dec. 12 Hrg. Tr. 17:20-18:2.

Ms. Reyes explained that on a day when a significant number of complaints is filed with the CFC Clerk's Office, there may be a backlog that cannot be processed in a single day. *See id.* at 8:5-14. On such a busy day, complaints are collected and stamped with the date received, but processed as late as the following day. *Id.* Ms. Reyes further stated that when there is a backlog, there is no particular order in which complaints are processed. *Id.* at 8:15-19. Finally, Ms. Reyes confirmed that 21 complaints – the number filed with the CFC on December 29, 2006 – was "a lot" and that it is possible not all 21 could have been processed by the end of the day. *Id.* at 10:5-19. The Government's supplemental brief ignores these statements completely.

The Government instead concentrates on its theory that there is a correlation between the order of the receipt numbers and the order in which the corresponding complaints were filed. The Government also attempts to discredit Ms. Applegate by emphasizing that her testimony describing how she obtained the receipts has changed over the course of the three evidentiary hearings. The Government notes that Ms. Applegate testified on December 10, 2007, that she "walked th[e Complaints] over [to the Court of Federal Claims], filed them, <u>obtained a receipt</u>, and then walked back to the office." Def. Supp. Br. at 32 (citing Dec. 10 Hrg. Tr. 20:7-9) (emphasis added). However, on February 1, 2008, during the *Passamaquoddy* evidentiary hearing, Ms. Applegate testified that she did not receive receipts from the CFC Clerk's Office at the time she filed the Complaints. *Id.* at 33 (citing *Pass.* Hrg. Tr. 22:20-25).

When cross-examined during the *Passamaquoddy* hearing about changing her testimony, Ms. Applegate indicated that the testimony she gave on December 10 was based on an "assumption" rather than on her actual recollection. *Pass.* Hrg. Tr. 59:2-6. Ms. Applegate now contends that she knows she did not receive receipts in person from the CFC Clerk's Office on December 29, 2006, because Plaintiff's counsel was not notified of judicial assignments for the four CFC cases until January 3-4, 2007. In its supplemental brief, the Plaintiff explains that

> [s]hortly after testifying on December 10, 2007, Ms. Applegate reviewed the receipts issued by the Court of Federal Claims in the actions she filed on December 29, 2006, discovered [a] January 3, 2007[,] e-mail exchange with

-15-

> Mr. Harper and learned that Ms. Reyes had explained that the Court of Federal Claims placed [] post-it notes with judicial assignments on the receipts. Based upon this information, Ms. Applegate knows that she did not receive receipts for the *Salt River*, *Tohono O'Odham*, and *Passamaquoddy* CFC Complaints until several days after the filings.

Pl. Supp. Br. at 35.

In the January 3, 2007, e-mail exchange referenced above, Mr. Harper inquired whether judges had been assigned to the four CFC actions. *Id.*; *id.* at Ex. 17. Ms. Applegate responded the same day that CFC judges had been assigned to *Passamaquoddy*, *Ak-Chin*, and *Tohono O'Odham*. *Id.* at Ex. 17. Those assignments were e-mailed to Mr. Harper through the Court's Electronic Case Filing (ECF) system. *Id.* However, a judicial assignment was not made in the instant case until January 4, 2007. *Id.* at 34-35; *Pass.* Hrg. Tr. 42:23-25:1. After learning from Ms. Reyes that the CFC Clerk's Office places post-it notes with the name of the assigned judge on the filing receipts it issues and noticing that such post-it notes are affixed to the four CFC receipts from the December 29 filings, Ms. Applegate apparently concluded that she could not have left the Court of Federal Claims with those receipts as she initially indicated. *See* Pl. Supp. Br. at 33-35.

We find the evolution of Ms. Applegate's testimony troubling. As the Government points out, it is unclear who placed the post-it notes on the Plaintiff's four CFC filing receipts, when the post-it notes were written, or when the post-it notes were affixed to the receipts. Def. Supp. Br. at 35. However, we find most persuasive those statements by Ms. Reyes confirming that one cannot determine in what order complaints were filed with this Court merely by looking at the docket numbers in relationship to one another or in relationship to the six-digit number on the filing receipts. *See* Dec. 12 Hrg. Tr. 9:1-7. We therefore reject the Government's attempt to lend significance to the order of the CFC receipt numbers.

### 4. The Plaintiff's "Multiple Trip" Theory

The Government finally argues that the Court should reject the Plaintiff's theory that Ms. Applegate intentionally made "multiple trips" to the Court of Federal Claims on December 29 because this theory is "a [t]ransparent [a]ttempt to [c]onform the [f]acts of this [c]ase to Plaintiff's [p]ost-hoc [i]nterpretation of 28 U.S.C. § 1500." Def. Supp. Br. at 15. Relying on the same alleged inconsistencies discussed above, the Government argues that the Plaintiff's "multiple trip" theory is not only inconceivable, but was manufactured in rebuttal to the Government's motion to dismiss pursuant to § 1500. *See id.* at 16-17. The Government highlights the fact that the *Passamaquoddy* and *Salt River* DC Complaints were ready first thing in the morning on December 29, while the *Salt River* CFC Complaint was still being drafted that morning and the *Ak-Chin* CFC Complaint was not ready until sometime after 11:40 a.m. *Id.* at 17. The Government

contends that the only logical conclusion to be drawn from these facts is that the *Salt River* CFC Complaint could not have been filed until after 11:40 a.m., when all four CFC Complaints were ready for filing.  *Id.*

As discussed above, Ms. Applegate testified on three occasions that, as per Mr. Harper's oral instructions, she came to this Court around 9:30 a.m. on December 29 to file the *Passamaquoddy*, *Salt River*, and *Tohono O'odham* CFC Complaints, then took a cab to the DC District Court to file the *Passamaquoddy* and *Salt River* DC Complaints around 10:30 a.m., returned to the CFC to file the *Ak-Chin* CFC Complaint when it was ready sometime after 11:40 a.m., and returned to the DC District Court later that day to file the *Ak-Chin* DC Complaint.  *See Ak-Chin* Hrg. Tr. 18:20-19:9; Dec. 10 Hrg. Tr. 20:5-15; *Pass.* Hrg. Tr. 14:9-18.  In an attempt to discredit Ms. Applegate's testimony that she intentionally made two trips to the CFC on December 29, the Government sets forth a timeline in its supplemental brief which outlines each of the steps Ms. Applegate claims she took to file all seven complaints.  *See* Def. Supp. Br. at 28-30.  The timeline assigns a hypothetical start time and duration to each step and assumes that Ms. Applegate completed each step "at 'warp speed.'"  *Id.* at 28.  The Government concludes based upon this timeline that it is "highly unlikely" that the events of December 29 occurred as Ms. Applegate testifies they did.  *See id.* at 30.

The Government has its own theory of how the events of December 29 unfolded.  The Government posits that Ms. Applegate went to the DC District Court first to file the *Passamaquoddy* and *Salt River* DC Complaints, then came to this Court to file all four CFC Complaints sometime after 11:40 a.m. when the *Ak-Chin* CFC Complaint was ready.  *See id.* at 17, 31.  However, for unexplained reasons, Ms. Applegate was able only to file the *Ak-Chin* CFC Complaint.  She had to return to her office then come back to this Court to file the *Passamaquoddy*, *Salt River*, and *Tohono O'odham* CFC Complaints.  *See id.* at 31.  The Government argues that its theory accounts for the disparity in the CFC filing receipt numbers.  *See id.*

The Government urges the Court to adopt its theory of the events of December 29 rather than accept Ms. Applegate's testimony, which the Government argues "defies common sense."  *Id.* at 16.  However, the Court cannot accept the Government's theory over the consistent testimony presented by Ms. Applegate on three different occasions.  In addition, the Court notes that taxi cab receipts from December 29 prove that Ms. Applegate took three separate trips to the DC District Court that day.  Although there is no evidence documenting the number of trips she made to this Court, it is plausible that Ms. Applegate was required to come here multiple times to accomplish all four filings.  We therefore must reject the Government's attempt to discredit the Plaintiff's "multiple trip" theory.

**CONCLUSION**

The Court finds Ms. Applegate to be a credible witness. *See Ak-Chin Indian Cmty.*, 2008 U.S. Claims LEXIS 14, at *28. While it has made every effort to discredit Ms. Applegate's testimony, the Government has not succeeded. We find that the Plaintiff has proved by a preponderance of the evidence that the CFC Complaint was the first of the *Salt River* Complaints filed on December 29, 2006. Having resolved the "pending" issue in favor of the Plaintiff, we need not consider whether the Plaintiff asserted the "same claims" in both complaints. *See Hardwick Bros.*, 72 F.3d at 886.

We conclude that the Plaintiff did not have any claims pending for purposes of § 1500 when the instant Complaint was filed. Section 1500 therefore does not apply and does not preclude our jurisdiction over the Plaintiff's claims. **We therefore DENY the Government's motion to dismiss. The parties are to file a Joint Status Report proposing further proceedings in this case no later than May 22, 2008.**

**IT IS SO ORDERED.**

    s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge